# Guarantee Title and Trust Company, Appellant, *v.* Gillespie.

*Principal and agent—Authority of agent—Stipulation as to keeping deposit in bank.*

Where a mother addresses a letter to her son offering to sell him for a sum stated her stock in a corporation, and also authorizing him to deposit the proceeds of the stock at four per cent interest, in any bank that will aid him in the deal, such letter confers no authority upon the son to contract with a bank, as agent for his mother, to leave her money on deposit until the son's loan to the bank is paid, and as collateral therefor.

Argued Nov. 4, 1908. Appeal, No. 238, Oct. T., 1908, by plaintiff, from decree of C. P. No. 2, Allegheny Co., April T., 1908, No. 542, dismissing bill in equity in case of Guarantee Title & Trust Company v. Alan K. Gillespie et al. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for the rescission and cancellation of a contract, and to compel the defendant, Ada R. Gillespie, to deliver up a bank book for cancellation, and for an injunction restraining Ada R. Gillespie from asserting any right or claim by reason of the entry to her credit in the bank book.

MILLER, J., specially presiding, filed the following findings of fact and conclusions of law:

### FINDINGS OF FACT.

1. Alan K. Gillespie was the vice president, treasurer and a director in the Gillespie-Curll Company, a corporation doing business in the city of Pittsburg. W. F. Brown was an em-

ployee and stockholder in said company. Mrs. Gillespie was the holder of 325 shares therein, and in addition had large claims against her son for money advanced to him. She desired to dispose of her stock and in connection therewith to adjust her claims against her son and had submitted to him in pursuance thereof the proposition contained in the next finding.

2. By letter dated April 5, 1907, written by C. F. Evans, a banker in Wilmington, N. C., a son-in-law of Mrs. Gillespie and with whom she was then staying, and who was acting in her behalf, appears, after a number of references to the condition of her health, inter alia, the following:

"I told her that I thought she should make a proposition to take over her entire interest including the $11,000 of stock held as collateral against your note and to make this proposition upon such a liberal basis that you should have no difficulty in financing the deal through your banking friends and making a quick turn of the whole transaction. In brief, I suggested that she offer to you $42,500 which includes the note as you know on a basis of $75.00 per share for the stock which would mean a bonus to you of say $10,875 and that she then agrees to place the funds in any bank or banks which may aid you in the deal, thus furnishing you quite a good argument to them in case one be needed. They would pay her four per cent upon the deposit. Of course she has no need for the money. All she wants is to be free of any other details than the simple act of drawing her interest through the bank when it is due. She feels, too, that in bringing this about she will greatly relieve you and her of countless worries incident to long and frequent correspondence concerning details of the business."

3. On the receipt of this letter Alan K. Gillespie went over its contents with the other defendant, W. F. Brown, whom he desired to interest in the purchase of this additional stock. As a result of the letter and his agreement with Brown he entered into negotiations with the plaintiff company, a trust company doing a banking business in the city of Pittsburg, through its vice president, R. J. Davidson, and F. W. Brown, an employee and brother of the defendant W. F. Brown, that it should loan to them $25,000, taking as collateral security these 325 shares of

stock in the Gillespie-Curll Company to be purchased with his thirty additional shares; that the amount of the loan should be deposited in the savings department of the plaintiff company to the credit of Mrs. Gillespie and that the deposit should remain there as collateral security for the loan until it was paid.

4. On or about April 11, 1907, this was carried into effect. A demand note for $25,000 with said stock as collateral, to the order of said Brown, signed by said Gillespie and indorsed by Brown, was delivered to plaintiff's bank; it handed to Gillespie a duplicate deposit slip to the credit of Mrs. Gillespie's savings account in the said sum of $25,000, which slip he at once mailed to his mother. On her return to Pittsburg this deposit slip was returned to the plaintiff, and a savings book was given in lieu thereof, with the entry of $25,000 to the credit of Mrs. Gillespie as of the date of April 13, 1907. This book contains certain regulations, among others providing that interest should be paid semiannually on the deposit, and that no portion thereof nor the whole could be withdrawn without certain notices therein specified. Mrs. Gillespie did not know at that time that Brown was interested in the purchase or had entered into the negotiations with the plaintiff company.

5. The shares of stock in the Gillespie-Curll Company, collateral for the payment of said notes now in the possession of the plaintiff, are not the identical shares belonging to Mrs. Gillespie; 325 shares of the total number were issued by the Gillespie-Curll Company to Alan K. Gillespie with the knowledge and consent of the plaintiff company and without the knowledge of Mrs. Gillespie, and the shares belonging to her when received by Alan K. Gillespie were taken up and canceled by the Gillespie-Curll Company.

6. At the time the loan was negotiated Alan K. Gillespie at the request of the plaintiff made a financial statement of the condition of the Gillespie-Curll Company showing assets over liabilities of $7,234, exclusive of the capital stock $75,000 paid in. Later, in November, the plaintiff ascertaining that Alan K. Gillespie's financial statement was not true, and before Mrs. Gillespie refused to make an agreement pledging her deposit as collateral, demanded and obtained from Alan K.

Gillespie 1,125 shares of the capital stock of the Elizabeth Ice Company as further security for said loan.

7. Shortly after the loan was obtained in April the plaintiff prepared a form of agreement for Mrs. Gillespie's execution, providing for the pledging of her deposit in accordance with the representations made by her son. It made frequent requests for this paper. Alan K. Gillespie agreed to forward it to his mother for execution, she being then in Europe. There is no evidence that she ever received it.

In November, 1907, a similar paper was presented to her in Uniontown, Pennsylvania, by her son, Alan K. Gillespie, and F. W. Brown of the plaintiff company, for execution. She said it was the first time she ever heard of such alleged arrangements and declined to execute the paper.

8. Shortly after her refusal to execute the paper submitted to her or to be bound by the promise made by her son the plaintiff gave notice of its rescission of said contract, electing to retain Mrs. Gillespie's deposit in payment of said loan. The plaintiff has in its possession the said note and all the collateral. Alan K. Gillespie paid the interest on said note quarterly as demanded to January 1, 1908, when the plaintiff company declined to receive further interest. Mrs. Ada R. Gillespie has not been credited with nor has she received any interest on her deposit made April 13.

9. The letter from Evans, acting for Mrs. Gillespie, to Alan K. Gillespie, contained no authority, expressed or implied, to make any agreement whereby her money should remain on deposit with the plaintiff company until the note was paid and as security therefor.

## CONCLUSIONS OF LAW.

1. Alan K. Gillespie was not the agent of his mother, Ada R. Gillespie, with authority to bind her to leave the deposit of $25,000 in the plaintiff's bank until the Gillespie-Brown note was paid and as security therefor; and she is not bound by any representations he made or any conditions he attached to the deposit.

2. The agreement set up by plaintiff company between it and

Alan K. Gillespie, not being authorized by Ada R. Gillespie as to the pledging of her savings account for the payment of the loan, and not being within the scope of the authority contained in Evans' letter to Gillespie, or any other authority shown in this case, is insufficient in law and equity to hold her money liable for the payment of the note, or to warrant the plaintiff in rescinding the transaction and attempting to cancel on its books the credit of $25,000 to Mrs. Gillespie's account.

3. The only contract existing between Ada R. Gillespie and the plaintiff is that contained in the regulations governing her deposit, which, as said before, provided, inter alia, that the plaintiff shall pay her four per cent interest semiannually in January and July, and that certain notices must be given before she can withdraw her money or any portion thereof.

4. Even if an implied contract has been made out binding Mrs. Gillespie, as contended for by the plaintiff, it could not rescind, having made no demand upon either Gillespie or Brown for the payment of the note, nor offering to pay Mrs. Gillespie any interest on her deposit or credit it with the same, or offering to refund the interest paid on the loan to Gillespie and Brown, and because having not demanded payment of the loan it has refused to receive the interest due as tendered by the obligors.

5. It follows that the plaintiff's bill shall be dismissed at its cost.

*Error assigned* was decree dismissing the bill.

*A. Leo Weil,* with him *C. M. Thorp* and *H. D. Montgomery,* for appellant.—Alan K. Gillespie was authorized by his mother to agree with the bank to leave on deposit the $25,000 until his note on which he obtained said $25,000 was paid. Even if Alan Gillespie exceeded his authority when he agreed on behalf of his mother to deposit this money with the bank on the express terms and conditions that it should not be withdrawn until his note upon which the $25,000 had been obtained should be paid, Mrs. Gillespie cannot claim the $25,000 obtained upon these express terms and conditions and at the same time repudiate the act of her agent and son in making the agreement upon

which the money was thus obtained and deposited: Singer Mfg. Co. v. Christian, 211 Pa. 534; McNeile v. Cridland, 168 Pa. 16; Gaines v. Miller, 111 U. S. 395 (4 Sup. Ct. Repr. 426); Caley v. Phila. & Chester County R. R. Co., 80 Pa. 363; Miller v. Hanover Junc., etc., R. R. Co., 87 Pa. 95; Keough v. Leslie, 92 Pa. 424; Penna. Nat. Gas Co. v. Cook, 123 Pa. 170; Spath's Estate, 144 Pa. 383.

*John S. Ferguson*, for appellee.

PER CURIAM, January 4, 1909:

The decree is affirmed at the cost of the appellant on the findings of fact and the conclusions of law by Judge MILLER, specially presiding.